## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

CHARLES SHEFFIELD; and MERRY C.
PORTER, individually and Executrix of the
Estate of Brooks Porter,

                            Plaintiffs,

                v.

GEORGE P. BUSH, in his official capacity as
Commissioner of the Texas General Land
Office, and KEN PAXTON, in his official
capacity as Attorney General for the State of
Texas,

                           Defendants.

Civil Action No. 3:21-cv-00122

## COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)

### INTRODUCTION

1.      Charles Sheffield and Merry C. Porter, individual citizens of Texas who own property in Surfside Beach, Texas, bring this complaint against state officials who are unlawfully and unconstitutionally enforcing the Texas Open Beaches Act (Act or Open Beaches Act), Tex. Nat. Res. Code § 61.001, *et seq.*, through issuance of an Order that unconstitutionally and illegally takes, seizes, and deprives Plaintiffs of real property.

2.      Plaintiffs own title, in fee simple, to four lawfully constructed homes on beachfront property in Surfside Beach, Texas. Under color of the Open Beaches Act, the Commissioner of the Texas General Land Office (GLO) and other officials have issued an Order that imposes a

public beach on Plaintiffs' property, authorizing public use and occupation of their land, and injuring the value, use, and marketability of the properties.

3.      The Order, issued on March 29, 2021, creates a new public beach area by redrawing the landward boundary of public beaches at Surfside Beach at a line located 200 feet inland of the mean low tide line. *See* Exhibit A. This new "200 foot" public beach area encumbers all private dry sand beaches in Surfside Beach, and other private land, converting the subject areas into public property, without compensation, due process, reasonable pre-deprivation procedures, or hearings.

4.      Indeed, the creation of the 200-foot wide public beach area instantly places many longstanding, lawfully built beach homes, including those owned by Plaintiffs, "on public beach." *See* Exhibit B (boundary line maps). In so doing, the Order instantly subjects the previously unencumbered private residential lots to rules and restriction applicable to public beaches under the Open Beaches Act, including ones that allow the general public to use the properties any time of day, for the next two years.

5.      The Order eviscerates Plaintiffs' right to exclude trespassers from the private land under and immediately around homes that is now deemed a "public beach," creates liability issues and dangers for families who rent the homes, devalues the properties, harms their marketability, and inhibits Plaintiffs' ability to repair, build on, and use their properties.

6.      While protecting legitimate public beach access rights, through legitimate means, may be laudable state goal, Defendant officials may not turn private lots into a "public beach" open for unfettered public use, by the stroke of a pen, and thereby take Plaintiffs' property rights without just compensation, due process, or reasonable predeprivation procedures, and in violation of the Act.

7.     The Order should be declared to be an ultra vires, unconstitutional act of state officials operating under color of state law, and enjoined as such, and Plaintiffs hereby sue for that relief.

## THE PARTIES

8.     Plaintiff Charles Sheffield (Sheffield) is an individual citizen of the United States, who is domiciled in, resides in, and works in Texas. Sheffield has lived in Texas for decades. He owns beachfront properties in Surfside Beach, Texas, in fee simple, including those residentially developed properties located at 109, 111, and 814 Beach Drive, Surfside Beach.

9.     Plaintiff Merry C. Porter is Executrix of the Brooks Porter Estate (Porters or Estate) and sole beneficiary of the Estate. The Estate owns beachfront property in fee simple in Surfside Beach, including the residentially developed property at 1206/1207 Sargrasso Circle, Surfside Beach, Texas. The Porters, including Merry Porter, are native Texans and long-time residents of Surfside Beach, Texas. Merry Porter has the authority to make decisions about the disposition of the property at 1206/1207 Sargrasso Circle.

10.    Defendants include George P. Bush, in his official capacity as Commissioner of the GLO (GLO Commissioner), and Ken Paxton, in his official capacity as Attorney General for the State of Texas (Attorney General).

11.    As Commissioner of the GLO, George Bush construes and enforces the Open Beaches Act and the Order as it pertains to beachfront property. As a state official, Bush may not act under state law in a manner that violates the Takings Clause of the Fifth Amendment or the Fourth Amendment, as incorporated against the states through the Fourteenth Amendment, the Due Process Clause, or the Act. In his official capacity as a state officer, Bush is subject to a suit

seeking equitable, prospective relief from the enforcement of a law or policy, like the Order, that violates federal constitutional rights. *Ex parte Young*, 209 U.S. 123 (1908).

12.     Ken Paxton is the Attorney General for the State of Texas. As such, Paxton has the power, at the request of the GLO Commissioner, to seek a court order enforcing the Open Beaches Act against property owners, Tex. Nat. Res. Code § 61.018(a), and to enforce state law in general. The Attorney General may not enforce a state law that violates the federal Constitution or the Act. In his official capacity as Attorney General, Paxton is subject to a suit seeking equitable, prospective relief from a law or policy that violates the federal Constitution.

## JURISDICTION AND VENUE

13.     The claims in this action arise under the Fifth and Fourth Amendments to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment, as well as under the Act. The Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. A remedy is sought under the Declaratory Judgment Act, 28 U.S.C. § 2201.

14.     A remedy and claim is also brought pursuant to Texas Natural Resources Code Section 61.019 (the Open Beaches Act), which states, in relevant part: "A littoral owner whose rights are determined or affected by this subchapter may bring suit for a declaratory judgment against the state to try the issue or issues."

15.     Venue is proper in this Court because this action concerns private properties located in Brazoria County, Texas, within the jurisdiction of the Galveston Division of the Southern District of Texas.

## LEGAL BACKGROUND AND FACTS

## TEXAS COASTAL PROPERTY LAW

16.     In Texas, the state owns the beach area that extends from the mean low tide line to either (1) the mean high water mark, called mean high tide line, for grants of land tracing to English common law or (2) the mean higher high water mark, for grants of land tracing to Mexican/Spanish law. The mean low and high tide marks are generally calculated as an average of low and high tide marks over an approximately 19 year period. The mean higher high water mark is calculated as an average of the daily highest high tides over a 19 year period.[1]

17.     The state-owned lands located between the mean low tide line and mean high water mark or mean higher high water mark are sometimes known as the "wet beach."

18.     The state does *not* hold title to beach or coastal areas lying landward of the applicable mean high tide line, including those land between the applicable mean tide line and the vegetation or dune line. These areas, while occasionally wet during the highest tides or storms, are often called the "dry beach." These areas of land are part of the private title held by people, like Plaintiffs, owning beach front land along the Texas Gulf coast.

19.     The Texas Open Beaches Act recognizes and codifies Texas common law rules holding that the public can acquire beach easements or rights in private coastal areas by judicially proving and establishing the existence and boundaries of a prescriptive or dedicated public easement over a particular area of private land. Tex. Nat. Res. Code § 61.001(8); *id.* § 61.011(a).

---

[1]  The beaches generally experience two high tides per day. The mean high water mark or mean high tide line is calculated as an average of both these high tides over a 19 year period. The mean higher high water mark, on the other hand, is calculated based on an average of the highest daily high tide, not both high tides.

20.     Nevertheless, for many years prior to 2012, state officials adhered to a policy and custom of automatically treating all private dry beach areas lying between the mean high water mark and the line of vegetation as a public beach area, without regard for the private ownership of such areas, and without due process or just compensation for the owners. Under this policy, state officials automatically treated, advertised, and regulated the vegetation line as the landward boundary of the public beach, authorizing and encouraging public use of private dry beaches lying seaward of that line under a false claim that those areas are automatically (presumed) a "public beach."

21.     However, in *Severance v. Patterson*, 370 S.W.3d 705 (Tex. 2012), the Texas Supreme Court rejected state officials' policy of automatically treating the first line of vegetation as the landward boundary of the public beach. The court confirmed, upon certification of questions from the Fifth Circuit Court of Appeals, that state officials must judicially prove and establish the existence of a public easement on private coastlands, including dry beach areas seaward of the vegetation lien, according to ordinary common law doctrines, like prescription or dedication, before they may enforce a public use on such lands.

22.     *Severance* further held that, once state officials prove the existence and location of a common law public beach easement, avulsive events (like tropical storms) that push the vegetation line and dunes father inland do not correspondingly move lawful public beach areas inland to new areas of private land.

23.     In short, today, the line of vegetation is not an automatic boundary marker for public beaches or public beach access easements. Privately owned dry sand beach lands and other coastal shorelands cannot be presumed, declared, or treated as a "public beach" area simply because they are located seaward of the vegetation line.

24.     If and when public beaches or public beach access easements are judicially determined to exist private coastlands lying landward of the mean high tide line, the area is subject to the Texas Open Beaches Act and related regulations.

25.     That Act declares:

No person may display or cause to be displayed on or adjacent to any public beach any sign, marker, or warning, or make or cause to be made any written or oral communication which states that the public beach is private property or represent in any other manner that the public does not have the right of access to the public beach as guaranteed by this subchapter.

Tex. Nat. Res. Code § 61.014(b).

26.     The Act further declares:

It is an offense against the public policy of this state for any person to create, erect, or construct any obstruction, barrier, or restraint that will interfere with the free and unrestricted right of the public, individually and collectively, lawfully and legally to enter or to leave any public beach or to use any public beach or any larger area abutting on or contiguous to a public beach if the public has acquired a right of use or easement to or over the area by prescription, dedication, or has retained a right by virtue of continuous right in the public.

*Id.* § 61.013(a).

27.     The Act authorizes substantial civil and administrative penalties against anyone who violates the Act and related regulations, including those recognizing and protecting "the free and unrestricted right of the public, individually and collectively, lawfully and legally to enter or to leave any public beach or to use any public beach" id., and rules prohibiting repairs and certain private uses of property within a designated public beach area. *Id.* § 61.0181.

28.     The Act ad related regulations do not include any provision or means to compensate owners of private beachfront lands that are regulated, declared, or treated as a public beach area under color of the Act.

## PLAINTIFFS' PROPERTIES

29. The Gulf coast beaches in Surfside Beach are marked by the following features: (a) the mean low tide (MLT) line, also called the mean low water mark, calculated as the average of low tides over an approximately 19 year period. The MLT is typically located near open Gulf waters; (b) the mean higher high water mark, calculated as an average of higher high tides over an approximately 19 year period The mean higher high tide line is located landward of the MLT; (c) the beginning of coastal vegetation or dunes. The line of vegetation or dunes is located landward of the mean higher high tide line.

30. Located between the mean higher high tide line and first sign of vegetation or dunes in Surfside Beach is a strip or ribbon of (mostly) dry sandy beach or other coastal land. This ribbon of land lying between the mean higher high tide line and dunes or vegetation has always been private property and is held in divided ownership as part of the title to private, beachfront parcels adjacent to the Surfside coastline.

31. The original grantor of the coastlands lying landward of mean higher high tide line in Surfside Beach did not reserve such lands for public beach use or access when first granting the lands to private parties.

32. State officials have never acquired a judicial determination that a prescriptive, dedicated, or other legitimate common law public easement exists on private land lying between the mean higher high water mark and vegetation or on other private beachlands adjacent to the Gulf waters.

33. Plaintiff Sheffield owns three separate beachfront parcels of property in Surfside Beach, Texas, each developed with a single-family home.

34.     Sheffield owns a small, single-family home and property at 109 Beach Drive, Surfside Beach, Texas, also known and recorded as Lot 5 Block 2, of the G.D. Shanks Addition to the Town of Surfside. He also owns an adjacent home and lot at 111 Beach Drive, Surfside Beach, Texas, also known and recorded as Lot 4 Block 2, of the G.D. Shanks Addition to the Town of Surfside.

35.     Sheffield owns a third home at 814 Beach Drive, Surfside Beach, Texas, also known and recorded as Lot 21 Block 2, of the Surfside Townsite, Subdivision B, Section 2. All are properties are beachfront properties which Sheffield rents out to families and others for periodic visits, an endeavor which supplies Sheffield with regular, reliable income.

36.     Sheffield purchased the homes at 109 and 111 Beach Drive together in 2019 for approximately $600,000. The home at 111 Beach Drive was lawfully built on private land in the late 2000's. Title to these two lots extends seaward to the mean higher high water mark. Sheffield's properties at 109 and 111 Beach Drive thus include (generally) dry lands lying landward of the mean higher high water mark, including land between that mark and the first sign of natural vegetation.

37.     Sheffield acquired the home and property at 814 Beach Drive in 2015 for approximately $250,000. This property was lawfully constructed in approximately 1984. A paved two-lane road—Beach Drive—separates 814 Beach Drive from the Gulf waters. This lot contains land that is landward of the mean higher high water mark, including the land under and immediately around the home.

38.     Sheffield's homes and the land immediately around and under those homes are not on submerged lands. The homes, driveways, accessory structures, and curtilage immediately around the homes is landward of the mean higher high water mark, and on private, dry land.

39.     There are no recorded public beach access easements or rights-of-way on the title to the land under and immediately around the homes on Sheffield's properties. To Sheffield's knowledge, the properties have never been consistently utilized for recreational beach purposes by members of the public and no one has ever proven the existence of a common law public easement on the land under or immediately adjacent to the homes.

40.     When Plaintiff purchased the properties at 109, 111, and 814 Beach Drive, they were not classified by state officials as "on the public beach." Neither Sheffield nor his predecessors has ever dedicated land at 109, 111, and 814 Beach Drive to public use.

41.     The properties at 109, 111, and 814 Beach Drive are not a nuisance or threat to public health, safety, or public beach access and are not under any such order or declaration issued by any authorized agency, official, or court.

42.     The Estate of Brooks Porters owns a small "A-frame" beach home and lot at 1206/1207 Sargrasso Circle, in Surfside Beach, Texas, also known and recorded as Lot 5, Block 2 of the Palm Beach Subdivision. On belief and knowledge, the home was lawfully built sometime in the 1970's. The Porters acquired the Sargrasso property in 2011 for approximately $100,000. The Porters rent this property out for income.

43.     The property at 1206/1207 Sargrasso Circle includes land that is located landward of the mean higher high water mark and between that mark and the first sign of vegetation. The home and land under and immediately around the home is landward of the mean higher high water line and not on submerged lands. When the Porters purchased the property at 1206/1207 Sargrasso Circle, it was not classified by state officials as "on the public beach."

44.     There is no recorded public beach or public beach access easement on the title to the Sargrasso property. Neither the Porters nor their predecessors have ever dedicated the

10

Sargrasso property to public use. To Porter's knowledge, the properties have never been consistently utilized for beach purposes by members of the public and no one has ever proven the existence of a common law public easement on the land under or immediately adjacent to the homes.

45.     Plaintiffs purchased their residentially developed coastal property with the right and expectation of using that property for private, exclusive residential and rental purposes.

### THE 200-FOOT PUBLIC BEACH ORDER
### AND IMPACT ON PLAINITFFS' PROPERTIES

46.     In late summer of 2020, two tropical storms—Hurricane Laura and Tropical Storm Beta—came ashore in Texas and suddenly altered the topography of beaches in the Galveston and Surfside Beach area.

47.     General Land Office staff operating under authority of Defendant state officials surveyed the beaches in Surfside Beach between October 2020 and January 2021.

48.     On March 29, 2021, General Land Office Commissioner George P. Bush issued an Order relating to coastal property in Surfside Beach. The Order, entitled, "Temporary Order Suspending Determination of the Line of Vegetation and Suspending Enforcement of Certain Encroachments on the Public Beach," sets the boundary of the public beach in Surfside Beach at a "line 200 feet inland from the line of mean low tide." The Order is effective for a period of two years.

49.     The Order specifically declares that: "For the duration of the Order, the landward boundary of the public beach extends from the line of mean low tide (MLT) to a line 200 fee inland from MLT."

50.     The 200-foot line is apparently a proxy for the first line of natural vegetation, which Defendant officials claim could not be identified in Surfside Beach after, and because of, Hurricane Laura and Tropical Storm Beta.

51.     Notice of the Order was provided only at the time of its issuance. No notice of the public beach boundaries and area created by the Order was provided to property owners or the public prior to the issuance of the Order.

52.     Concurrently with issuance of the Order, State officials publicly issued photographic maps showing the approximate location of the 200-foot public beach area in Surfside Beach. These maps show the location of the 200-foot boundary line relative to developed beachfront properties in Surfside, Exhibit B, including Plaintiffs' properties. Exhibits D & E.

53.     Aware that the establishment of the public beach boundary 200 feet inland of the MLT beach boundary would cause some private homes to suddenly be on a "public beach," the Order suspends state attempts to remove private homes, under the Act, as "encroachments" on the "public beach." This home removal moratorium lasts for a period of three years.

54.     The Order does *not* suspend enforcement of the public's purported right, under the Open Beaches Act, to invade, use, occupy, and access private land that is within, and on, the 200-foot "public beach" area created by the Order.

55.     Neither the Order nor any provision of the Act limits the time, duration, or nature of activities that the public can engage in on lands, like Plaintiffs', deemed to a be within the "public beach" area mandated by the Order.

56.     To enable and enforce public use of private land within the 200-foot public beach area, the Order declares that "[n]o construction of habitable structures is allowed on the public beach easement . . . from MLT to 200 feet landward[.]"

57.    In a Frequently Asked Question sheet (FAQ) issued with the Order, state officials further declared that citizens who own property on the new 200-foot "public beach" cannot (a) "repair, replace, or construct a slab of concrete, fibercrete, or other impervious material" on their property, (b) add a room or any other additional square footage to their houses; and (c) cannot place any material other than sand on their lots. *See* Exhibit C.

58.    These and other repair and construction limitations apply to a private home within the 200-foot public beach area, even if only a portion of the home falls within the 200-foot public beach area.

59.    Defendant officials have, or will soon, file the Order in the "real property records of the county" to which the Order applies to ensure formal encumbrance of the property titles to which the Order applies.

60.    The Order does not offer just compensation to property owners whose land is deemed to now be a "public beach" area, and who suffer damage to the fair market value, profitability, use, and marketability of their beachfront property, due to the placement of a public area on their land.

61.    Plaintiff Sheffield's rights in the properties at 109 Beach Drive, 111 Beach Drive, and 814 Beach Drive are subject to, and injured by, the Order. Specifically, the 200-foot public beach intersects the homes at 109 and 111 Beach Drive (i.e., the boundary line goes through the structures), placing a portion of the homes and curtilage immediately around the homes within the new, 200-foot (from MLT) "public beach" area. This subjects the 109 and 111 Beach Drive properties to public invasion, occupation, and use and damages the use, privacy, enjoyment, and value of those properties. *See* Exhibit D (photo of location of homes relative to 200-foot boundary line).

62.     The properties at 109 and 111 include accessory structures, such as private decks and stairways, that are now partially and wholly within the new 200-foot public beach area created by the Order and subject to public invasion and use under the Order and Act. The Act prevents Sheffield from lawfully excluding members of the public from these private areas.

63.     On belief and knowledge, Sheffield's home at 814 Beach Drive is also partially or wholly landward of the 200-foot public beach boundary line, placing the home, land under the home, and curtilage immediately around the home, partially or wholly within the "public beach" area. This subjects the 814 Beach Drive property to public invasion, access, and use and damages its value, use, and enjoyment.

64.     Plaintiff Porter's rights in the property at 1206/1207 Sargrasso Circle are also subject to, and injured by, the Order. Specifically, the 200-foot public beach intersects the Sargrasso home (i.e., the landward boundary line goes through the structure), placing the home and curtilage immediately around the home within the new, 200-foot (from MLT) public beach area. This subjects the Sargrasso property to public use and restricts the value, use, and enjoyment of the property. *See* Exhibit E (photo of location of home relative to 200-foot boundary line).

65.     Merry Porter owns interests in a larger home located seaward of the Sargrasso property. The Porters would like to move that larger, more seaward home away from the shore (landward) and onto the lot at 1206/1207 Sargrasso. The Order and Act prevents them from lawfully doing so, however, because moving the larger home to the 1206/2017 Sargrasso lot would now be considered illegal construction on a "public beach."

## DECLARATORY RELIEF ALLEGATIONS

66.     Under the Fifth and Fourteenth Amendments to the United States Constitution, Plaintiffs have a federal right to be free from an uncompensated taking of their right to exclusive

possession and use of their property. Under the Fourth Amendment to the Constitution, Plaintiffs have a right to be free of unreasonable seizure of the land under and immediately around their homes. Under the Due Process Clause of the Fourteenth Amendment, Plaintiffs have a federal right to notice and a hearing before they are deprived of their real property interests and to be free of arbitrary property deprivations.

67.     Under the Open Beaches Act and Texas law, Plaintiffs have a right to hold and use every part of their property as private and exclusive property unless and until there is a final determination from a court that a public easement exists on their land.

68.     The GLO Commissioner and other officials have enforced the Order and the Act to create and authorize a "public beach" on Plaintiffs' properties, seizing and taking their property without just compensation, due process, or compliance with reasonable common law procedures.

69.     There is a justiciable controversy as to whether state officials are enforcing the Order to unconstitutionally impose a "public beach" on Plaintiffs' land without just compensation, due process, or compliance with the reasonable predeprivation procedures required by the Fourth Amendment.

70.     There is a justiciable controversy as to whether the Order is facially unconstitutional because it takes and seizes private property for public use without concurrent provision of just compensation, due process, or compliance with the reasonable procedures required by the Fourth Amendment.

71.     A declaratory judgment as to whether Defendant Officials may constitutionally and lawfully make Plaintiffs' property into a "public beach" area, by the simple expedient of redrawing the public beach boundary, will serve a useful purpose in clarifying and settling the legal relations between the parties.

72.     A declaratory judgment as to whether state officials are enforcing the Order and/or Act to unconstitutionally seize and take private property for public use without just compensation, due process, or compliance with reasonable predeprivation procedures will terminate and afford relief from the uncertainty and insecurity giving rise to this controversy.

73.     A declaratory judgment as to whether the 200-foot public beach boundary is created by the Order is arbitrary and/or not rationally related to any legitimate public beach interest or method for establishing public beach areas will clarify legal relations between the parties and provide relief from the uncertainty giving rise to this controversy.

74.     To the extent Defendant Officials rely on Natural Resources Code Section 61.020 to defend the Order, a declaratory judgment as to whether that provision unconstitutionally shifts the burden of proof to a property owner to prove that their private land is not subject to a public easement will clarify legal relations and afford relief from the uncertainty the provision causes to property titles and ownership.

75.     A declaratory judgment as to whether the Order is facially unconstitutional because it converts all private land to which it applies into public property without concurrent provision of just compensation, due process, or compliance with reasonable predeprivation procedures will clarify unsettled legal relations and provide relief from uncertainties affecting title to coastal property in Surfside Beach.

**INJUNCTIVE RELIEF ALLEGATIONS**

76.     Plaintiffs have no adequate remedy at law to address the arbitrary, unreasonable, uncompensated, and procedurally defective enforcement of the Order and/or Act against their properties.

77.     There is a substantial likelihood that Plaintiffs will succeed on their claim that enforcement of the Order and/or Act to convert their properties into a "public beach" without just compensation, predeprivation process, a rational connection to legitimate public beach interests, or compliance with reasonable procedures violates the Takings Clause, the Fourth Amendment, the Due Process Clause, and state law.

78.     Plaintiffs will likely suffer irreparable injury absent a preliminary and permanent injunction restraining state officials from enforcing the Order and/or Act to convert their private residential property into a public beach area without compensation, due process, or compliance with reasonable predeprivation procedures.

79.     The injury to Plaintiffs—the unconstitutional imposition of a public beach and public use of their property and resulting take and seizure of their property interests without due process, compensation, or compliance with reasonable predeprivation procedures—outweighs any harm the injunction might cause state officials.

80.     An injunction restraining state officials from enforcing the Order and/or Act to unconstitutionally take and seize private property without just compensation, due process, or compliance with reasonable predeprivation procedures, will not impair, but rather enhance, the public interest.

## LEGAL CLAIMS

### COUNT I

### Physical Taking of Private Property
### Without Just Compensation

81.     All prior allegations are hereby included and incorporated in this claim.

82.     The uncompensated creation of a "public beach" on private land is a per se physical taking that violates the Fifth Amendment.

83. The uncompensated authorization of public beach access and use rights on private land, sometimes conceptualized as the appropriation of a public easement, is a per se, physical taking that violates the Fifth Amendment.

84. The authorization of a continuous, ongoing, public invasion of real property for a temporary period is unconstitutional without just compensation.

85. The 200-foot (from MLT) "public beach" area created by the Order converts every area of private coastal lands at Surfside Beach to which the Order applies into public property for at least two years, without providing or securing prompt just compensation for the period of public use.

86. In creating a 200-foot public beach area at Surfside Beach, the Order authorizes public access and use of every area of private coastal land to which the Order applies, eviscerating the owners' constitutionally protected right to exclude others from those areas, without just compensation.

87. By placing or moving a "public beach" or public access easement onto all private lands lying between the mean higher high water mark and 200 foot line, based on the effects of Hurricane Laura or Tropical Storm Beta, the Order is ultra vires and amounts to a taking of property on its face.

88. The Order effects an unconstitutional taking of property on its face by authorizing ongoing public use and occupation of every area of private beach land to which it applies, for at least two years, without just compensation.

89. As applied to Plaintiffs, the Order unconstitutionally takes real property interests, including (but not limited to) their right to exclude unwanted members of the general public from the property under and immediately around their homes.

90.     The Order takes an expansive public easement on and from Plaintiffs' land, and burdens their titles, without just compensation.

91.     The Order destroys and takes the "private" aspect of Plaintiffs' private property, making their property into a publicly controlled and occupied area of land, all without concurrent provision of just compensation.

92.     As applied to Plaintiffs, the Order authorizes and effects a continuous, unconstitutional physical invasion, occupation, and taking of Plaintiffs' real property, for at least two years.

93.      The Order frustrates Plaintiffs' distinct investment-backed expectations related to their real property ownership and use, and harms the properties' value, without compensation.

## COUNT II

### Violation of Procedural
### Due Process Under the Fourteenth Amendment

94.     All prior allegations are hereby included and incorporated in this claim.

95.     Plaintiffs have a federal constitutional right to reasonable notice and an opportunity to be heard before being deprived of private property interests.

96.     Real property, including Plaintiffs' residential coastal property, is a constitutionally protected property interest.

97.     Defendant state officials issued the Order and imposed the 200-foot public beach on private beachfront land, including Plaintiffs' properties, without sufficient notice to Plaintiffs or other affected property owners.

98.     The state officials issued the Order and imposed a "public beach" on private beachfront lands, including Plaintiffs' properties, without providing Plaintiffs and other affected

property owners with adequate notice and a predeprivation hearing or other predeprivation opportunity to be heard.

99.     If state officials had provided Plaintiffs and other affected coastal property owners with adequate notice and an opportunity to object to imposition of a "public beach" on their land prior to issuance of the Order, there is a substantial likelihood that state officials would have understood that federal and state legal principles prohibit the Order, and therefore delayed, changed, or withdrawn the Order.

## COUNT III

### Violation of Due Process Under the Fourteenth Amendment

100.     The Order and the 200-foot "public beach" area it establishes is irrational and arbitrary on its face, in that the 200-foot public beach boundary and area lack any rational or lawful connection to legitimate public beach interests or to a legitimate method of establishing public beaches and/or easement boundaries.

101.     The Order and the 200-foot "public beach" area it establishes is irrational and arbitrary as-applied to Plaintiffs' properties, as the 200-foot public beach boundary and area it creates lacks any rational or lawful connection to Plaintiffs' title, to state law methods of establishing public beach access rights, or legitimate public beach interests or boundaries.

102.     To the extent Defendant Officials rely on Natural Resources Code Section 61.020 to defend the Order, that provision violates Plaintiffs' due process rights by shifting the burden of proof to Plaintiffs to prove that their private land is *not* subject to a public easement, in contravention of established law placing the burden on an easement claimant to prove that private land is encumbered by public rights.

**COUNT IV**

**Unreasonable Seizure of Private Property in
Violation of the Fourth Amendment**

103.    All prior allegations are hereby included and incorporated in this claim.

104.    Plaintiffs' homes, and the land immediately under and around the homes, are protected from unreasonable seizures by the Fourth Amendment.

105.    A government-sponsored public invasion of Plaintiffs' residential private property interests interferes with Plaintiffs' possessory interests and is a "seizure" for purposes of the Fourth Amendment.

106.    Plaintiffs have a legitimate expectation of privacy in Plaintiffs' residential properties, and a legitimate expectation of the right to exclude others from the land under and around their homes.

107.    In issuing the Order, state officials have failed to incorporate or follow reasonable local procedural safeguards, such as the requirement that public beaches and public easements be proven and established in a court of law prior to enforcement.

108.    The Order effects an unreasonable seizure of protected interests on its face in authorizing a public beach on every area of private land between the mean higher high water mark and 200 foot line in Surfside Beach, without compliance with reasonable predeprivation procedures, including the requirement that easements be judicially established under common law prior to enforcement.

109.    As applied to Plaintiffs, the Order effects an unreasonable seizure of Plaintiffs' protected real property interests by authorizing a public beach on private land under and around their homes without prior compliance with reasonable predeprivation procedures.

## COUNT V

### Declaratory Judgment under Tex. Nat. Res. Code § 61.019

110.    All prior allegations are hereby included and incorporated in this claim.

111.    Texas Natural Resources Code Section 61.019 (the Open Beaches Act) states, in relevant part: "A littoral owner whose rights are determined or affected by this subchapter may bring suit for a declaratory judgment against the state to try the issue or issues."

112.    The Order, issued under color of the Open Beaches Act, frustrates Plaintiffs' property rights in their littoral properties, and is therefore subject to challenge under Natural Resources Code Section 61.019.

113.    The Order and its establishment of a 200-foot public beach area and/or a public beach easement boundary at a line 200 feet inland of the MLT is arbitrary, unlawful, and unconstitutional.

114.    State officials may not establish, declare, and regulate private coastal land as a public beach under color and authority of the Act based on the location of the vegetation or a purported proxy for that line—like the 200-foot line.

115.    State officials may not place or move a public beach or public beach easement onto private land like Plaintiffs' based on the effects of a tropical storm or hurricane. Before enforcing or declaring a public beach or public easement on private coastlands, state officials must establish in court that a common law public easement exists and burdens the areas of land which they seek to open to public use.

116.    The Order violates the Act, the *Severance* decision, and Texas constitutional and common law principles, including the "Due Course of Law" provision in Article I, Section 19, of the Texas Constitution.

**RELIEF SOUGHT**

Wherefore, Plaintiffs respectfully request that the Court:

1.      Declare that the Order effects and unconstitutional taking of private property in imposing public use or access rights on every area of private coastal land to which it applies, without just compensation;

2.      Declare that the Order effects an unconstitutional physical taking of Plaintiffs' properties without just compensation;

3.      Declare that the Order effects an unreasonable seizure of Plaintiffs' land by imposing a public beach or public easement on that land without compliance with reasonable procedural safeguards;

4.      Declare that the Order deprives Plaintiffs of real property interests without notice or a hearing and thus, without due process of law;

5.      Declare that the Order's creation of a 200-foot public beach is arbitrary and irrational and violative of due process;

6.      Declare, pursuant to Tex. Nat. Res. Code § 61.019, that the Order violates the Fifth Amendment of the Constitution without provision of just compensation, violates Texas law, including *Severance*, and violates the Due Course of Law provision of the Texas Constitution, and is therefore invalid;

7.      Preliminarily and permanently enjoin Defendant State Officials from enforcing the Order on its face and as-applied to Plaintiffs;

8.      Any other available relief that is appropriate and which becomes apparent during the course of litigation; and

9.      Attorneys' fees under 42 U.S.C. § 1988.

Dated: May 24, 2021.

                        Respectfully submitted,

                        <u>s/ J. David Breemer</u>
                        J. DAVID BREEMER
                        Attorney-in-Charge
                        Cal. Bar No. 215039
                        S.D. Tex. No. 632473
                        JEFFREY W. McCOY*
                        *Seeking Admission*
                        Cal. Bar No. 317377
                        Pacific Legal Foundation
                        930 G Street
                        Sacramento, California 95814
                        Telephone: (916) 419-7111
                        Facsimile: (916) 419-7747
                        Email: JBreemer@pacificlegal.org
                        Email: JMcCoy@pacificlegal.org
                        *Counsel for Plaintiffs*